ISAAC VAN KUREN *vs.* THE TRENTON LOCOMOTIVE AND MACHINE MANUFACTURING COMPANY and others.

A nice or doubtful question of law will not be decided on a motion to dissolve an injunction, but will be reserved for the final hearing.

An injunction restraining interference with the complainant in the exercise of his rights as a partner of the defendants will be dissolved on the clear averment in the answer, that the partnership was dissolved by mutual consent.

Can a corporation enter into a copartnership? *Query.*

*Dutcher,* for complainant.

*Beasley,* for defendants.

THE CHANCELLOR. The defendants ask a dissolution of the injunction on the ground that the equity of the bill is denied by the answer.

The material charges of the complainant's bill are, that on the 20th of January, 1860, an agreement was entered into between the complainant and the company, by virtue of which the complainant and the company agreed to carry on the foundry business upon the following terms.

The company agreed to furnish their foundry, with all its fixtures, machinery, facilities, power, wharf room, flasks, and pattern room, for the purpose of manufacturing iron castings, for the sum of $4000 per annum, to be paid out of the undivided proceeds of the business; additional tools to be at the joint account of the foundry.

The company were to furnish the necessary capital to carry on the business, to use the car wheels of complainant's patent, and to take from the foundry all other iron castings used in their business at the regular market prices.

The complainant, on his part, agreed to give the company the exclusive right to manufacture and sell his patent railroad car wheel and Hurlbert's patent plows, to defend the patents in all cases, and to give his personal and faithful attention to the foundry concerns.

The net profits of the business to be equally divided between the parties.

The agreement, unless sooner annulled by mutual consent, to be binding for twelve years.

On the 31st days of June and December, in each year, an account of stock to be taken, an account current to be made up, and the net profits to be equally divided between the parties. At the close of the contract, an account of the stock and joint liabilities was to be taken by the parties, and an equal division of profits made. The

agreement contains other provisions, but these are all that are pertinent to the present inquiry.

The bill further charges, that this agreement constituted the complainant a partner with the defendants, and liable for the debts of the concern; that the agreement is still in force; that the complainant, in pursuance of the contract, took charge of the foundry on the 15th of March, 1860, and transacted the business in the name of I. Van Kuren and Company; that the net profits of the business, up to the 1st of January, 1861, are $4916.43, one half of which is justly due to the complainant from the machine company for his share of the profits of the castings; that there is due to the employees and workmen in the foundry about $1500, payable out of the proceeds of the foundry business, which sum has been charged in account by the machine company to Van Kuren & Co., but has never been paid; and that the complainant, the agreement remaining in full force, has been forcibly excluded from the management of the foundry and of his interest as a partner in the business; that the partnership property is taken by the machine company without the payment of the debts of the concern or of the complainant's share of the property; and that the company are insolvent and unable to pay their just debts, and if permitted to take possession of the foundry property, the complainant will be unable to recover either the amount due to him or the means necessary to pay the debts of the concern.

The material averments of the bill which constitute the complainant's equity, and upon which his right to a continuance of the injunction rests, are—

1. That the complainant was and is a partner of the defendants, and that he is entitled to the aid of the court to protect him in the exercise and enjoyment of his rights as partner.

2. That if the partnership or agreement is determined, he is entitled to the sum of $2458.21, as his share of the

profits of the concern, and to be protected against liabilities for its debts, and that the defendants should therefore be restrained. from diverting the property of the foundry to the purposes of the machine company, until an account can be taken and the foundry debts satisfied.

It is objected—first, that a corporation has no power to form a partnership with an individual to carry on the business, or a part of the business, for the transaction of which the company were incorporated. I do not think that this objection, even if it be well founded, should avail the defendants upon the present motion. A nice or doubtful question of law should be reserved for final hearing. It is clear that these defendants have, under color of this contract, had the services of the complainant and the use of his patents for the greater part of a year, and they admit that he has received no remuneration whatever. Under such circumstances, a court of equity would not suffer the defendants, except in a perfectly clear case, to withdraw the property from the protection of the court upon the allegation that they had no power to make the contract.

For the purposes of this motion, it will be assumed, therefore, that the corporation had the legal *power* to create the partnership.

Does the agreement in fact create a partnership? The answer of one of the defendants, as a matter of opinion and belief, denies that the agreement does constitute a partnership. It is a mere inference or conclusion of law, and not a matter of fact, and therefore not properly a denial of the equity of the bill.

It seems too clear to admit of dispute that the instrument, in its legal effect, does create a partnership, and render the complainant liable for the debts of the concern, and that not only as to third parties, but as between the parties themselves. The joint concern pay the machine company $4000 per annum for the rent of the foundry and its appurtenances. The machine company

furnish the capital. The complainant contributes his services and the use of his patents; at the close of the concern an account is to be taken by the parties of the *joint stock and joint liabilities*, and an equal division of profits to be made. Can the legal and essential ingredients of a partnership be more clearly stated? It is urged that the parties did not intend to create a partnership, because the term partners or partnership is no where used in the instrument. It may be urged, with equal truth, that the term foreman or superintendent, or any other term which might indicate the precise character of the complainant's employment is carefully avoided, so that the intent of the parties must be ascertained from the legal effect of the instrument, and not the names employed by the parties. In legal effect the instrument constituted a partnership.

Does that partnership continue? Upon this point the answer of both defendants is full, direct, and unequivocal. They both say that it was agreed by the complainant and the defendants, acting for the company, that the business connection created by the agreement should cease and determine on the 31st day of December last, and that an account of stock should be taken, and a settlement made up to that time, in accordance with the provision of the article of agreement. This is not new matter. The complainant, in his bill, directly charges that the contract between him and the company is still in full force and effect, never having been closed or annulled by the parties thereto. The answer upon this point is directly responsive to the charge of the bill. The agreement, whether it constituted a partnership or not, was, by its terms, to continue for twelve years, unless sooner annulled by mutual consent; and the defendants clearly could not determine the contract of their own motion, and forcibly exclude the defendant from the possession and enjoyment of his rights. Against this wrong the injunction was designed to protect him. Upon this point the equity of the bill is fully denied by the answer.

Van Kuren v. Trenton Locomotive and Machine Manufacturing Co.

The answer also denies that there is any money whatever due to the complainant from the foundry concern, as his share of the net profits; but, on the contrary, they aver that the business, during the whole time of its management by the complainant, occasioned a constant loss.

The only remaining ground of equity in the bill is, that the complainant, by reason of the contract, is liable for debts due on the foundry account to the workmen. The bill does not allege the existence of any other debts than those due to the workmen. The answer admits that there is due to the workmen the sum of $842.08, but alleges that it is a debt of the machine company alone, in whose name all the contracts were made, and by whom workmen were furnished to carry on the operations of the foundry. But admitting the case made by the bill upon this point to be uncontradicted, assuming that there is due to the workmen the sum of $1500, as charged by the complainant, and that, by reason of the partnership, he is or may be liable for the amount, it constitutes no ground for sustaining the injunction and continuing the complainant in the possession and control of the property. The utmost that he could ask for his protection would be the appointment of a receiver.

The court may doubtless, in the exercise of a sound discretion, continue the injunction to the hearing notwithstanding the equity of the bill is denied by the answer. But this is clearly not a case for the exercise of such discretion. On the contrary, it is obvious that the continuing of the injunction and keeping the complainant in the possession and management of the foundry, as the case now stands before the court, would lead to serious embarrassment to the business of the defendants without any corresponding benefit to the complainant.

The injunction must be dissolved with costs.